UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROY F. EDMUND, on behalf of himself
and those similarly situated,

　　　　　　　Plaintiff,

vs.　　　　　　　　　　　　　Case No.　2:10-cv-474-FtM-29SPC

CITY OF FORT MYERS,

　　　　　　　Defendant.
_____

## OPINION AND ORDER

　　　This matter comes before the Court on Defendant City of Fort Myers's (defendant or the City) Rule 56 Dispositive Motion for Summary Judgment and Memorandum of Law (Doc. #34) filed on October 13, 2011. Plaintiff, Roy F. Edmund (plaintiff or Edmund), filed a response on October 27, 2011. (Doc. #41.) Also before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. #37) filed on October 14, 2011. The City filed a response on November 15, 2011. (Doc. #45.) For the reasons discussed below, defendant's motion is denied and plaintiff's motion is granted in part and denied in part.

## I.

　　　Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a

verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000).  In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party.  Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995).  The Court does not weigh conflicting evidence or make credibility determinations.  Hilburn

v. Murata Elecs. N. Am., Inc., 181 F.3d at 1225.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty Cnty., 684 F.2d 1365, 1369 (11th Cir. 1982)).  However, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003).  A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.  Id.

## II.

The following facts are undisputed: Edmund was employed by the City and performed his duties on the Eastwood Golf Course ("Eastwood"), a golf course owned and operated by the City.[1] Although plaintiff initially misstated his work schedule, as is discussed in more detail infra, the parties ultimately agree that plaintiff's regular schedule was a forty (40) hour work week as follows: Monday, Tuesday, Thursday, and Friday, from 5:00 AM

---

[1]Edmund alleges that he was employed as an Irrigation Technician.  In their Answer, the City admits that Edmund was employed by the City but denies that he was employed as an Irrigation Technician.  (Doc.#9, ¶18.)  The City does not indicate what position it believes Edmund was employed.  The Fair Labor Standards Act Exemption Form, produced by Edmund, indicates that he was employed as a "Golf Course Maintenance Worker" rather than irrigation technician. (Doc.#37-4, p.2.).  This distinction has not been asserted to be material in this case.

through 1:00 PM, Wednesday, from 5:00 AM through 10:30 AM, and either Saturday or Sunday, from 5:00 AM through 7:30 AM.  The City of Fort Myers required employees working at the Eastwood Golf Course to clock in and clock out for their shifts.  The parties agree that plaintiff typically clocked in every morning at approximately 4:30 a.m.  They disagree, however, as to whether Edmund was engaged in work activities prior to his regular start time of 5:00 a.m.

Plaintiff filed a one-count Complaint on his behalf and those similarly situated (Doc. #1) against the City alleging defendant violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, by failing to properly compensate him for overtime hours worked in excess of his 40 hour per week schedule.  He seeks compensation, liquidated damages, and reasonable attorney's fees.

### III.

Congress enacted the FLSA to ensure a "minimum standard of living necessary for health, efficiency, and general well being . . . ." for workers in the United States.  29 U.S.C. § 202(a).  The FLSA mandates that an employee who is "engaged in interstate commerce" must be paid an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week.  29 U.S.C. § 207(a).  If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid

overtime wages and back pay. Id. § 216(b).  Before a plaintiff may recover for uncompensated overtime work under the FLSA, he or she must prove that (1) they worked overtime hours without compensation, and (2) the defendant had knowledge, or should have had knowledge, of the plaintiff's overtime work.  Reich v. Dep't of Conservation & Natural Res., 28 F.3d 1076, 1082 (11th Cir. 1994). An employee who brings suit for overtime wages under the FLSA has the burden of proving that uncompensated work was performed. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Since April 15, 1986, a municipality has been an "employer" for purposes of the FLSA.  Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 533 (1985); Wethington v. City of Montgomery, 935 F.2d 222, 224-25 (11th Cir. 1991)(citing Fair Labor Standards Amendments of 1985, Pub. L. No. 99-150 § 2(c), 99 Stat. 787, 788).

**IV.**

**A.   The City's Motion for Summary Judgement (Doc. #34)**

The City seeks summary judgment because Edmund initially misstated his work schedule (Doc. #34.)  In support, the City provided an affidavit of Kathy Musa (Musa), the Administrative Manager[2] for the City of Fort Myers, in which she attests to plaintiff's regularly scheduled work week.[2]  (Doc. #34-1.)

---

[2]As Administrative Manager, Musa's duties included time keeping and payroll.  (Doc. #34-1, ¶2.)

[2]Attached to Musa's affidavit is a pay register which
(continued...)

Edmund acknowledges his initial misstatement regarding his work schedule, but contends he has since amended his statement and the misstatement is irrelevant.  (Doc. #41.)

On January 7, 2011, Edmund filed his Responses to the Court's Interrogatories (Doc. #25) in which he described his regular work schedule as follows: "Monday through Saturday, from 5:00 a.m. through 1:00 p.m. I worked, and was expected to work from 4:30 through 1:30 p.m.  I was scheduled to have a half-hour lunch, but I was not able to take my lunch due to the work load." (Doc. # 25-1, p.1.)  In response to interrogatory 7, which sought an accounting of plaintiff's claim, Edmund responded that in addition to his regular schedule of 40 hours per week, he worked 14 hours of overtime.  Id.

On October 14, 2011, plaintiff filed an Amended response to the Court's Interrogatories (Doc. #36) in which he described his regular work schedule as follows:

> Monday, Tuesday, Thursday, Friday, 5:00 AM through 1:00 PM, Wednesday, 5:00 AM through 10:30 AM, and Saturday OR Sunday, 5:00 AM through 7:30 AM.  However, I regularly and customarily began work before the 5:00 AM (between

---

[2](...continued)
indicates that between July 30, 2008, and April 14, 2010, Edmund was paid $6,659.06 in overtime wages.  (Doc. #34-1, p.3.)  The City, however, makes no argument in their motion that summary judgment is warranted because Edmund has been fully compensated. To the contrary, the City's motion is limited to summary judgment based on plaintiff's misstatement of his work schedule.  The same affidavit was provided in response to plaintiff's Motion for Summary Judgment and is discussed in further detail in Section V.B.1 ,infra.

> 4:30 AM and 4:40 AM) scheduled start time and continued
> to work after the scheduled end time (i.e. after 1:00 PM
> on Mondays, Tuesdays, Thursdays and Fridays, after 10:30
> AM on Wednesdays, and after 7:30 AM on weekends.

(Doc. # 36-1, p. 1.)   This amended statement comports with defendant's account of Edmund's schedule.   The accounting of plaintiff's claim in his amended response indicates that he worked "approximately" 14 overtime hours per week.   In both his first and amended response to the court's interrogatories, plaintiff claims he is owed $24,328.34 in overtime compensation.

Although plaintiff initially misstated his work schedule, plaintiff has always maintained that, in addition to his regularly scheduled 40 hour work week, he regularly worked overtime for which he was not compensated.   The Court is not persuaded that plaintiff's initial failure to correctly report the exact times he was expected to work warrants summary judgment in favor of defendant, nor does defendant cite to any case law which would support such a finding.   Plaintiff's misstatement has been cured by plaintiff's amended response, and summary judgment as a sanction would simply be far too severe.   Defendant's motion for summary judgment is denied.

## B.   Edmund's Partial Motion for Summary Judgment (Doc. #37)

Plaintiff's motion seeks summary judgment that: (1) defendant violated, and is liable under, the FLSA for unpaid wages; (2) plaintiff is entitled to an award of liquidated damages; and (3) plaintiff's affirmative defenses lack merit.   Plaintiff contends

that trial should be set solely on the issue of damages.  (Doc.
#37.)  The Court disagrees.

### 1.  **Whether Defendant is Liable for Unpaid Wages and Liquidated Damages Under the FLSA**

Plaintiff contends that summary judgment is appropriate as to
the City's liability for unpaid wages under the FLSA because his
time cards clearly reflect that he was clocked in for more time
than he was compensated.  He further contends that time cards were
often collected at the end of his regularly scheduled work day
although he often was required to stay after hours.  Plaintiff
contends that he was engaged in work activities for all time he was
clocked in.  Plaintiff acknowledges that he has been compensated
for some overtime throughout his tenure with the City, but claims
that he has not been compensated for _all_ work he performed.

The City acknowledges that Edmund's time cards demonstrate
that plaintiff was clocked in for a period of time that exceeds his
compensation.  The City asserts, however, that although plaintiff
clocked in early, he usually was not engaged in work activities
until his start of shift.  On the occasions that he did engage in
work activities outside of his regularly scheduled shift, he was
compensated.  As such, Edmund is not entitled to any additional
overtime compensation under the FLSA.  Further, the City argues
that (1) it had an overtime policy and any overtime claimed by
Edmund was not authorized; (2) the City had no notice of Edmund's
alleged uncompensated overtime; (3) estoppel is applicable to

-8-

plaintiff's claim; and (4) any error in plaintiff's overtime pay is *de minimus*.

A genuine issue of material fact exists as to whether Edmund performed work for which he was not compensated.  The FLSA does not provide a definition of "work" so "the task of giving that term meaning has fallen to the courts." Anderson v. Perdue Farms, 604 F.Supp.2d 1339, 1347 (M.D. Ala. 2009).  The Supreme Court has interpreted "work" or "employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." IBP, Inc. v. Alvarez, 546 U.S. 21, 25 (2005). Whether time is spent predominantly for the employer's benefit or for the employees' depends on the circumstances of the case. See Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944).

Here, the Court is presented with contradictory sworn testimony regarding whether plaintiff was engaged in work activities performed outside of his regularly scheduled hours. Plaintiff's testimony indicates that he routinely arrived to work at 4:30 a.m. to open up the facilities, set up his vehicle, and take care of a dog "that was left by the past superintendent that was given to [him] to take care of." (Doc. #37-7, pp.7-8.)  In addition, prior to 5:00 a.m. he regularly rode the golf course looking for broken pipes, leaky pipes, and flooded drains in order to report any such problems to his supervisor, Kevin Burke (Burke).

(<u>Id.</u> at p.8.)  Plaintiff also testified that he regularly clocked
out a 1:00 p.m. although he remained working on the premises past
such time.  Finally, he attests that he was often called back to
work for emergencies for which he was not compensated.  (Doc. #37-
1, pp.4-7.)  Plaintiff's testimony is buttressed by his co-
worker's, Jeffrie Vandrie, affidavit who attests that Edmund was
frequently working on the golf course prior to 5:00 a.m., that
Edmund frequently worked after 1:00 p.m. even though the time cards
were collected early, and that on Wednesdays, time cards were
routinely collected before the end of shift and employees were not
paid if they continued to work after 1:00.  (Doc. #37-8, pp.3-4.)

In contrast, Burke's deposition testimony indicates that he
does not recall "sending [Edmund] out to ride the course prior to
5:00 a.m."  (Doc. #37-5, p.10.)  Burke further testified that on
occasions where Edmund was engaged in work activities prior to 5:00
a.m. he was compensated appropriately based on his clock-in and
clock out time.  (Doc. #37-5, pp.12-13.)  Burke's affidavit
indicates that on occasions where Edmund clocked in early although
no work was assigned, he was not compensated because he was
socializing, drinking coffee, and feeding the dog.  (Doc. #45-1,
p.5.)  Furthermore, Burke indicates that he maintained a journal of

work performed, and attested that his journal indicates that Edmund was in fact paid for all overtime work performed.[3]  (Id.)

Additionally, Musa's testimony also indicates that the time that employees clock in indicates when an employee "arrive[s] at work [and not] when they begin their work." (Doc. #37-3, pp.8-9.) She testified that the purpose of clocking in early is to attend to personal matters prior to beginning the workday. (Id. at p.6.)  If actual work was completed before an employee's start time, the supervisor made a notation on their time card to alert payroll that overtime work was in fact completed.  (Id. at pp.6-10; 12-13)

This conflicting sworn testimony goes directly to the heart of the conflict between the parties: whether Edmund performed work for which he was not compensated.  This raises a genuine issue of material fact which precludes summary judgment in favor of plaintiff.

Further, the Court is not persuaded by defendant's arguments that its overtime policy, lack of notice, doctrine of estoppel, or that Edmund's damages are de minimis preclude relief for plaintiff under the FLSA.

### a.  Overtime Policy

The City contends that it has an overtime policy that requires prior approval before overtime work can be conducted.  It contends that any uncompensated overtime work was in contravention of this

---

[3]A copy of his journal was not provided to the Court.

policy, and therefore he is not entitled to compensation under the FLSA.

The City contends that its overtime policy, a copy of which was not provided to the Court, provides:

> Department Directors may schedule overtime or extra shifts when it is deemed necessary.  Supervisors will assign overtime to employees in the particular job for which overtime is required.  Non-exempt employees (those employees subject to minimum wage and overtime provisions of the Fair Labor Standards Act) are not permitted to work overtime without the prior approval of their supervisor or department director.

(Doc. #45, p.3.)  Nonetheless, under the FLSA regulations,

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.  Thus, the existence of the City's overtime policy, standing alone, is insufficient to defeat plaintiff's FLSA claim.  Furthermore, the Court does not find defendant's reliance on Contini v. United Trophy MFG. Inc., 2007 WL 1696030 (M.D. Fla. June 12, 2007) persuasive.  In Contini, the plaintiff failed to include his overtime worked on his time sheets and never provided notice of any kind to his employer.  The plaintiff conceded that although he had the opportunity, he chose not to ask his supervisor for the hours of overtime he believed he was entitled.  Here, plaintiff's time cards clearly reflect a period of time for which plaintiff was clocked-in but was not compensated.

### b.  __Lack of Notice__

The City also contends that plaintiff is precluded from recovery because it had no notice that Edmund contested his overtime compensation.   Specifically, it contends that Edmund consistently signed the following certification on his time-cards which provided him approximately 138 times to contest his pay:

> I, the undersigned, certify that this is a true and accurate record of my working time for the period mentioned.  I have not had any unreported work related accidents or injuries during this time.

(Doc. #45, p. 4.)

"[I]n reviewing the extent of an employer's awareness, a court need only inquire whether the circumstances were such that the employer either had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." Reich v. Dep't of Conservation & Nat'l Res., 28 F.3d 1076, 1082 (11th Cir. 1994) (internal quotation marks omitted). "The employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business." Allen, 495 F.3d at 1319 (quoting Golf King Shrimp Co. v. Wirtz, 407 F.2d 508, 512 (5th Cir.1969)) (internal quotation marks omitted); see also Reich, 28 F.3d at 1082.  Furthermore, an employer "does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. The cases must be rare where prohibited work can be done and knowledge or the consequences of knowledge avoided."

Reich, 28 F.3d at 1082 (quoting Wirtz, 407 F.2d at 512) (internal quotation marks omitted).

Despite an employer's duty to inquire, "[a]n employer must have an opportunity to comply with the provisions of the FLSA." Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414-15 (9th Cir. 1981).  When an "'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not [an FLSA] violation.'"  Newton v. City of Henderson, 47 F.3d 746 (5th Cir.1995) (quoting Forrester, 646 F.2d at 414); see also Allen, 495 F.3d at 1319 ("There is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it."); Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir.1972); Gaylord v. Miami-Dade County, 78 F.Supp.2d 1320, 1325 (S.D. Fla. 1999) ("An employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur.").

Defendant did not provide a copy of any of plaintiff's time cards to the Court, but such documents were included within plaintiff's submission.  A review of the time cards demonstrates a computerized clock in and clock out time.  In addition, there are handwritten notations from payroll which indicate a period of time which is often times less than the hours for which Edmund was

clocked in.  For each time card, Edmund signed the certification recited above.  The certification, however, is not dated.  (See generally, Docs. ##37-10;37-11.)  As such, it is unclear whether Edmund certified as to the accuracy of the computerized clock in time or the handwritten notations from the payroll department or both.  Further, the record contains competing affidavits regarding whether Edmund's supervisor was aware of plaintiff's alleged overtime work.  (See, e.g., Doc.#37-5 pp.10;12-13 and Doc. #37-7, pp.7-8.)  Accordingly, there is sufficient evidence to create a disputed issue of material fact as to whether the City was provided with sufficient notice under the FLSA.

### c.  Estoppel

Generally speaking, estoppel is not a recognizable defense under the FLSA.  However, an exception exists "where the party asserting estoppel is not seeking to entirely preclude the opposing party from bringing its FLSA claim." Gonzalez v. Spears Holdings, Inc., 2009 WL 2391233 (S.D. Fla. July 31, 2009). In order for an estoppel defense to stand against an FLSA claim, the estoppel sought must be less than full, and a good faith reason must be provided.  Judkins v. Bloomen Intern., Inc., 2010 WL 2510665, *4 (M.D. Fla. June 24, 2010.) Here, the City seeks to preclude Edmund from asserting his FLSA claim.  Thus, the exception to the general rule that estoppel is not a recognizable offense under the FLSA is not applicable.

### d.  **De Minimis**

The City also argues that any error in Edmund's compensation is *de minimus*.  As such, plaintiff's recovery is precluded.

"An employer is not required . . . to compensate an employee for all of the employee's time that is associated with work." Kavanagh v. Grand Union Co., 192 F.3d 269, 272 (2d Cir. 1999).  The Portal-to-Portal Act, 29 U.S.C. § 251 et seq., which amends the FLSA, identifies activities that are not compensable under the FLSA.  Under the Portal-to-Portal Act, an employer is not subject to liability under the FLSA for failure to pay employees overtime compensation for

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities,

> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

-16-

Preliminary and postliminary activities are considered compensable if they are "an integral and indispensable part of the [employee's] principal activities." <u>Steiner v. Mitchell</u>, 350 U.S. 247, 256 (1956); <u>Dunlop v. City Electric, Inc.</u>, 527 F.2d 394, 399 (5th Cir. 1976).[4] By contrast, an employer is not required to pay employees for otherwise compensable activities if the time spent performing those activities is *de minimis*. <u>See Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 692 (1946), superseded by statute on other grounds as stated in <u>Carter v. Panama Canal Co.</u>, 463 F.2d 1289, 1293 (D.C. Cir. 1972); <u>Dunlop v. City Electric, Inc.</u>, 527 F.2d 394 (5th Cir. 1976).

In <u>Anderson</u>, the Supreme Court held that preliminary activities such as putting on aprons, removing shirts, turning on switches, and opening windows are "clearly work" because "they involve exertion of a physical nature, controlled or required by the employer and pursued necessarily and primarily for the employer's benefit." <u>Id.</u> at 693. An employer, however, is not required to pay employees for *de minimis* time performing compensable preliminary activities. <u>Id.</u> The Court made a distinction between *de minimis* and compensable work, stating:

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. . . . It is only when an

---

[4]The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. <u>See</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981)

employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

Id. at 692.

Here, unlike <u>Burton v. Hillsbourough Cnty.</u>, 181 F. App'x 829, 833 (11th Cir. 2006), cited by defendant, the plaintiff is not claiming compensation for a few minutes of time for which he was clocked in early.  Instead, plaintiff clocked in approximately 30 minutes early each day, a substantial measure of time.  As such, this argument is rejected.

Thus, plaintiff's motion for summary judgment as to the City's FLSA liability for unpaid wages as well as liquidated damages is denied.

### 2.   **The City's Affirmative Defenses**

Edmund also seeks summary judgment as to defendant's various affirmative defenses alleged in its Answer.  However, he only makes arguments pertaining to the City's 8th, 16th, and 17th affirmative defenses.

### a.   **8th Affirmative Defense**

Plaintiff contends that in its 8th affirmative defense, the City impermissibly pleads an offset.  (Doc.#37, p.15.)  The City's 6th, rather than 8th, affirmative defense pleads an offset.  The 8th affirmative defense alleges that plaintiff "has failed to state facts sufficient to support an award of damages, fees, or costs of any type against defendant."  (Doc. #9, p.4.)  To the extent

plaintiff challenges this affirmative defense, such a challenge is moot as this defense was stricken by the Court.  (See Doc. #19.)

To the extent that plaintiff intended to challenge the City's 6th affirmative defense of offset, the motion is denied.  The City's 6th affirmative defense:

> alleges that any claim for additional compensation by plaintiff must be reduced by compensation already paid to plaintiff for periods not compensable under the FLSA. Defendant further affirmatively alleges that any claims for compensation by plaintiff must be offset by premium compensation, bonuses, compensatory time off, or other job-related benefits paid or provided to plaintiff.

(Doc. #9, p.4, ¶6.)

The FLSA explicitly provides that certain payments made by an employer shall be "creditable toward overtime compensation," namely: (1) extra compensation provided by a premium rate for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee or in excess of the employee's normal working hours or regular working hours, as the case may be; (2) extra compensation provided by a premium rate paid for work by the employee on weekends, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days; and (3) extra compensation provided by a premium rate paid to the employee, in pursuance of an

applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek. See 29 U.S.C. §§ 207(e), 207(h). Conversely, there are several types of payments that cannot be applied to offset unpaid wages, including: (1) fringe benefits such as meals, health insurance, bonuses, and paid vacations, see Dunlop v. Gray-Goto, Inc., 528 F.2d 792, 794 (10th Cir. 1976) and Futrell v. Columbia Club, Inc., 338 F.Supp. 566, 573 (D.C. Ind. 1971); (2) wages for "down time" on the job, see Hiner v. Penn-Harris-Madison Sch. Corp., 256 F.Supp.2d 854, 860 (N.D. Ind. 2003); (3) wages for meal breaks, see Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 913-14 (9th Cir.2004); and (4) amounts loaned by an employer to an employee, see Donovan v. Pointon, 717 F.2d 1320, 1323 (10th Cir.1983).

Here, the City affirmatively alleges that it is entitled to an offset for "premium compensation, bonuses, compensatory time off, or other job-related benefits paid or provided to plaintiff." (Doc. #9, ¶6.)  Since at least premium compensation is a permissible offset under the FLSA, plaintiff's motion is denied.

b.   <u>16th Affirmative Defense</u>

Plaintiff also contests the City's 16th Affirmative defense in which defendant contends Edmund, and those similarly situated, "are not entitled to overtime pay under FLSA because they are exempt as employed in an executive, administrative, or professional capacity." (Doc. #9, p.5, ¶16.)  Edmund contends this affirmative defense is without merit because the City has conceded that he is an hourly paid employee.

An exemption from the overtime pay requirement exists for employees in a "bona fide executive, administrative, or professional capacity" as defined by regulations of the Secretary. 29 U.S.C. § 213(a)(1).  "The employer bears the burden of proving the . . . exemption. We construe overtime exemptions narrowly, against the employer." <u>Avery v. City of Talladega, Ala.</u>, 24 F.3d 1337, 1340 (11th Cir. 1994).  An employee is considered "paid on a salary basis" if "he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602.  "[A]s long as there is a non-deductible minimum, additional compensation on top of the non-deductible salary is permissible." <u>Hogan v. Allstate Ins. Co.</u>, 361 F.3d 621, 625 (11th Cir. 2004) (citation omitted).  And, while additional compensation is permissible, the regulations do not

require additional compensation.  29 C.F.R. § 541.604(a) ("An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. . . . Such additional compensation may be paid on any basis . . . .").

Here, Edmund has provided evidence that indicates that he was an hourly paid employee.  (See, e.g. Doc.#37-1, p.3.) The City makes no arguments in response, nor does it point the Court to any evidence that would support a finding that Edmund wad not an hourly paid employee.  In fact, the City's answers to Edmund's Interrogatories state that plaintiff was paid on an hourly basis. (Doc.#37-6, p.5.)  As such, it is undisputed that the City's 16th affirmative defense lacks merit.

### c.   17th Affirmative Defense

Plaintiff's request for summary judgment on defendant's 17th affirmative defense[5] is denied as moot.  This affirmative defense was stricken by this Court's Order.  (See Doc. #19.)

### d.   Remaining Affirmative Defenses

As to the remaining affirmative defenses, summary judgment is denied.  Edmund makes no arguments related to the remaining

---

[5]The City's 17th affirmative defense alleges "that it is entitled to the privileges and governmental immunities under Florida Statutes." (Doc. # 9, p.5, ¶17.)

defenses in his motion nor does he point to any evidence he believes demonstrates the absence of a material fact. <u>See</u> <u>Celotex</u>, 477 U.S. at 323. Because plaintiff has not met his burden, the request is denied.

   **ORDERED:**

   (1) Defendants' Rule 56 Dispositive Motion for Summary Judgment and Memorandum of Law (Doc. #34) is **DENIED.**

   (2) Plaintiff's Motion for Partial Summary Judgment (Doc. #37) is **GRANTED IN PART** and **DENIED IN PART:**

      (A) Plaintiff's motion for summary judgment as to defendant's 16th affirmative defense is **GRANTED.**

      (B) The motion is denied in all other respects as stated in this Opinion and Order.

   **DONE AND ORDERED** at Fort Myers, Florida, this __5th__ day of January, 2012.


                              _John E. Steele_
                              JOHN E. STEELE
                              United States District Judge


Copies: Counsel of record